UNITED STATES of America, Appellee,

v.

Dennis Frank SAZENSKI, Appellant.

UNITED STATES of America, Appellee,

v.

Edward William
MacDONALD, Appellant.

Nos. 87–5099, 87–5110.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 4, 1987.

Decided Nov. 16, 1987.

Steven Rau, Minneapolis, Minn., for appellant Sazenski.

Earl Gray, St. Paul, Minn., for appellant MacDonald.

Elizabeth DeLaVega, Asst. U.S. Atty., Minneapolis, Minn., for U.S.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

LAY, Chief Judge.

Dennis Frank Sazenski and Edward William MacDonald appeal their drug-related convictions. Both were convicted of one count of conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846; additionally, Sazenski was convicted of three counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). The two were jointly tried and convicted in district court.[1] As grounds for reversal they assert that (1) the trial judge's instruction to the jury on the conspiracy charge constructively amended the indictment or constituted a prejudicial variance; (2) MacDonald was prejudiced by the misjoinder of the cases and denial of his motions for severance; and (3) Sazenski was prejudiced by the district court's error in admitting $480,000 in cash into evidence. We affirm.

**Background**

A DEA informant made three separate purchases of cocaine from Dennis Sazenski on January 22, April 15, and April 18, 1986. These three purchases formed the basis for Sazenski's cocaine convictions, which he does not appeal. MacDonald was not involved in any of these transactions. In fact, the indictment charged that the conspiracy began on or about September 16, 1986, almost five months after the last of the cocaine transactions.

On August 30, 1986, Sazenski asked the informant if he wanted to buy more co-

caine. The informant declined but said that he was putting together a sale of 2000 pounds of marijuana. At a meeting on September 17, 1986, Sazenski was introduced to DEA Special Agent Leonard, who was posing as a drug dealer. At this meeting, Sazenski introduced MacDonald as his partner.

On October 1, 1986, Sazenski and MacDonald were given samples of the marijuana and the alleged conspirators arranged to purchase a total of 6200 pounds. This included the 2000 pounds that the informant was to sell.

The purchase took place on October 3, 1986. On that day, MacDonald kept trying to contact someone named John, his supposed source for the money needed. Sazenski's source of funds was his cousin Joseph Sazenski. Joe and Agent Leonard drove to various places while Joe collected $480,000 in cash. The two then went to the airport hangar where the marijuana was stored. Joe was arrested after loading eight bales in his van. Sazenski and MacDonald later followed Agent Leonard to the airport. Sazenski said he wanted to split the profits from Joe's deal. MacDonald declined to put any marijuana in his car, but said they should split the profits. At that point, both Sazenski and MacDonald were arrested. Joe pled guilty—the other two stood trial.

**Amendment of Indictment**

The first issue on appeal concerns asserted discrepancies between the conspiracy indictment and the trial court's responses to certain questions from the jury. The original indictment presented to the grand jury read in pertinent part as follows:

> From on or about September 16, 1986 to October 3, 1986, in the State and District of Minnesota, the defendants,
>
> **JOSEPH MICHAEL SAZENSKI,**
>
> **DENNIS FRANK SAZENSKI, and**
>
> **EDWARD WILLIAM MACDONALD,**
>
> did knowingly and willfully conspire and agree togther to possess with intent to

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

distribute approximately 6200 pounds of marijuana * * *.

Before trial, the district court, on its own motion, amended the indictment, presumably because Joseph Sazenski had entered a plea of guilty. The amended indictment read in pertinent part as follows:

From on or about September 16, 1986 to October 3, 1986, in the State and District of Minnesota, the defendants,

### DENNIS FRANK SAZENSKI

### and EDWARD WILLIAM MACDONALD

did knowingly and willfully conspire and agree together with Joseph Michael Sazenski to possess with intent to distribute approximately 6200 pounds of marijuana * * *

Neither the defendants nor the government objected to the amendment.

During deliberations, the jury submitted two questions to the trial judge concerning the conspiracy indictment. The trial judge's answers to those questions permitted the jury to convict the defendants of conspiracy without finding that the conspiracy included Joseph Sazenski.[2] The defendants contend that the trial court's responses thus constructively amended or created a prejudicial variance from the indictment, because, they argue, the indictment as amended before trial required the jury to find that Joseph Sazenski participated in the conspiracy before it could find either MacDonald or Dennis Sazenski guilty of conspiracy. We disagree with the defendants' interpretation of the amended indictment.

 Initially, it is clear that the original indictment and the indictment as amended before trial charged the same offense. Although the trial court generally has no power to amend an indictment even with the defendant's consent, *see United*

---

2. The discussion of the first question about the conspiracy charge was as follows:

THE COURT: Members of the jury, I received another indication from you that reads as follows:

"We, the jury, need clarification of the indictment naming Dennis Sazenski and Edward MacDonald. Does the indictment concern the men as one entity or singly with Joseph Sazenski? If so, why the separate verdicts?" And signed by the foreperson.

I am going to try to answer it. I'm not sure I totally understand it. I will try to answer it.

First of all, Joseph Sazenski is not a defendant in this action. You are not called upon to find his guilt or innocence, although he could have been involved in an underlying conspiracy, pursuant to the instructions that I gave to you.

The two defendants that you are called upon to reach a verdict on, Dennis Sazenski and Edward MacDonald, with respect to them, you could find both of them not guilty of conspiracy; you could find both of them guilty of conspiracy; you could find Dennis Sazenski to be guilty of conspiracy and Edward MacDonald to be not guilty of conspiracy; or you could find Edward MacDonald to be guilty of conspiracy, and Dennis Sazenski to be not guilty of a conspiracy.

So that it's up to you as to the finding of the guilt or innocence as to each of those two Defendants in this case on the count of conspiracy any way that you would want to do it, bearing in mind that you are to look at the evidence that relates to each of these two

Defendants, and follow the instructions that I gave to you.

Transcript at 649–50. The jury later presented another question:

THE COURT: Members of the jury, I have your most recent question which reads, "We, the jury, are confused about the wording of the conspiracy. Must the conspiracy include Joseph Sazenski, or could the conspiracy be between only Dennis Sazenski and Bill MacDonald?" Signed by the foreperson.

My answer is as follows: You are instructed that, as I have indicated to you earlier in the instructions, two or more persons are necessary to form a conspiracy. In response to your question, Dennis Sazenski and Bill MacDonald could form a conspiracy between the two of them.

On the other hand, Joseph Sazenski could be involved in the conspiracy with the two Defendants, or Joseph Sazenski could be involved in the conspiracy with either of the two Defendants; that is, Joseph Sazenski and Dennis Sazenski, or Joseph Sazenski and Bill MacDonald.

In direct answer to your question, the conspiracy could be between Dennis Sazenski and Bill MacDonald.

Remember, as I told you earlier, a conspiracy cannot consist of just one person plus a Government agent or Government informant. In other words, it must be two or more other than a Government agent or Government informant.

Transcript at 661.

*States v. Norris,* 281 U.S. 619, 623, 50 S.Ct. 424, 425, 74 L.Ed. 1076 (1930),[3] that rule is inapplicable when the court's change in the indictment is one of form only. *See United States v. Nabors,* 762 F.2d 642, 647 (8th Cir.1985) (exception to rule has been recognized "where mere surplusage is eliminated ('merely a matter of form'), nothing is added to the indictment, and the remaining allegations state the essential elements of an offense.") (citing *United States v. Burnett,* 582 F.2d 436, 438 (8th Cir.1976)). We are convinced that the court's pretrial change in the indictment was one of form only; despite the slight change in wording, both the original and amended indictments charged a single conspiracy between Mac-Donald, Dennis Sazenski, and Joseph Sazenski.[4]

As one court has stated, the question whether there has been an impermissible amendment of a conspiracy indictment must be resolved by asking

> whether there has been a modification of the elements of the crime from that charged by the grand jury to that

presented to the petit jury. The "gist" of a conspiracy * * * "is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." * * * The existence of an agreement, rather than the identity of those who agree, is essential to prove the crime of conspiracy.

*United States v. De Cavalcante,* 440 F.2d 1264, 1272 (3d Cir.1971) (quoting *United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 206, 85 L.Ed. 128 (1940)); *see also United States v. Williams,* 798 F.2d 1024, 1032–33 (7th Cir.1986) (court need not instruct the jury to find specific roles corresponding to the co-conspirators; no constructive amendment of conspiracy indictment when the court did not omit any of the essential elements of a conspiracy charge).

It is an elementary principle of conspiracy law that the government need not prove that all persons alleged to have been members of the conspiracy actually participated in the conspiracy. *See, e.g.,*

---

**3.** Some courts and commentators have questioned whether this rule retains its viability after the adoption of the Federal Rules of Criminal Procedure. *See, e.g., United States v. Milestone,* 626 F.2d 264, 266–67 (3d Cir.) ("* * * it has been held that even if the defendant consented to an amendment, jurisdiction would not be conferred on the court, although this proposition is questionable today since Fed.R.Crim.P. 7(b) permits a defendant to waive an indictment altogether in noncapital cases.") (citations and footnote omitted), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); C. Wright, *Federal Practice and Procedure Criminal* § 127 at 417 (1982) ("there are occasional statements in the cases that an indictment cannot be amended even with the consent of the defendant. If taken literally these would be indefensible. Except in capital cases a defendant may waive indictment altogether and consent to be proceeded against by information. * * * When the other great rights protected by the Constitution, such as right of counsel and right to trial by jury, are waivable by the defendant, it would be quite surprising if the right here in question could not be waived.") (footnotes omitted). We need not decide this question, however, because we hold that the change to the indictment in this case was one of form only, and such changes may be made with or without the defendant's consent.

**4.** We are convinced that the pretrial change in the indictment was not one of substance for

several reasons. First, the trial judge presumably felt that he was making only a wording change to reflect the fact that Joseph Sazenski was no longer a defendant. He thus moved Joseph Sazenski's name from the capitalized and indented list of defendants to the body of the count. We reject the defendants' implicit contention that we should presume that the trial judge intended thereby to effect a substantive change in the charge returned by the grand jury.

Second, neither the defendants nor the government objected to the change. The government almost certainly would have objected had it perceived that the amendment changed the substantive theory on which it had to prove its case.

Finally, the defendants' argument would require us to hold that an indictment reading "A, B, and C conspired" is substantively different from an indictment reading "A and B conspired together with C." A holding that the latter but not the former requires the jury to find that C participated in the conspiracy before it can convict either A or B is particularly anomalous when "C" is replaced with "unnamed persons." In neither case would the government have to prove that unnamed persons participated in the conspiracy; the defendants' argument, however, would require just such proof in the latter case based purely on a word order difference in indictments.

*United States v. Reese,* 775 F.2d 1066, 1071 (9th Cir.1985) ("[T]he government's failure to connect an individual to a charged conspiracy is not a fatal variance."); *United States v. Bell,* 651 F.2d 1255, 1258 (8th Cir.1981); E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* section 27.04 (1977) ("The evidence in the case need not establish * * * that all of the persons charged to have been members of the alleged conspiracy were such.") Thus, the trial court did not modify the elements of the crime charged by instructing the jury that it need not find that Joseph Sazenski participated in the conspiracy. The jury was still required to find that at least two people other than a government informant agreed together to possess with intent to distribute 6200 pounds of marijuana. Proof that Joseph Sazenski participated in the conspiracy was not a necessary element of the government's conspiracy case against MacDonald and Dennis Sazenski. We hold, therefore, that the trial court's responses to the jury's questions did not impermissibly amend the indictment.

**Misjoinder**

■ MacDonald next argues that joinder of his trial on the marijuana conspiracy indictment with Sazenski's trial on the cocaine charges was improper under Federal Rule of Criminal Procedure 8(b)[5] because there was no connection between the marijuana and cocaine transactions. He further argues that the misjoinder prejudiced him by confusing the jury and by creating a "spillover" effect. We agree that the defendants were misjoined under Rule 8(b), but, after a complete review of the record, are unable to find that MacDonald was prejudiced by the misjoinder.

We have repeatedly observed that for joinder of defendants under Rule 8(b) to be proper, there must be " 'some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense.' * * * Furthermore, to be part of the 'same series of acts,' the offenses charged must be part of one overall scheme about which all joined defendants knew and in which they all participated." *United States v. Grey Bear,* 828 F.2d 1286, 1298, (8th Cir.1987) (quoting *United States v. Bledsoe,* 674 F.2d 647, 656 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982)).

Thus, the impropriety of joinder in this case is clear. MacDonald had absolutely no connection to the cocaine transactions that took place between Dennis Sazenski and the government informant five months before the marijuana conspiracy was alleged to have begun. The government argues that there is a sufficient connection between the defendants' offenses because the cocaine dealings "provided the genesis" of the marijuana operation and because the same informant was involved in both the cocaine and marijuana transactions. We must disagree. The former argument is irrelevant; it fails to address how *MacDonald* was connected to the cocaine dealings. The latter argument would support joinder for trial of every defendant with whom a government informant had transacted.

■ Nevertheless, misjoinder requires reversal only if it "result[ed] in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). The *Lane* Court suggested several factors that might lead to a finding of prejudice: (1) failure to give limiting instructions; (2) evidence of guilt that is not overwhelming; (3) admission of evidence that would be inadmissible in a trial of only properly joined defendants and counts; (4) evidence on the improperly

---

**5.** Rule 8(b) provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

joined charges that is indistinct and not easily segregated; and (5) en masse trial of numerous defendants. *See id.*, 106 S.Ct. at 732 and n. 13. None of these factors is present here.

First, the trial court cautioned the jury during trial and in its instructions that it should consider the cocaine evidence only against Sazenski. Second, it is probable that evidence of Sazenski's cocaine dealings would have been admissible in a joint trial on the marijuana charge to rebut Sazenski's entrapment defense.[6] *See* Fed.R. Evid. 404(b). Third, the evidence of the cocaine transactions was distinct and easily segregated from the evidence of the marijuana transaction. Finally, because there were only two defendants, the danger of guilt by association inherent in en masse trials was substantially allayed. *Cf. Grey Bear*, at 1299.[7]

MacDonald argues that joinder of the cocaine and marijuana charges caused jury confusion, pointing to the jury's questions about the marijuana conspiracy charge. *See supra* n. 2. Those questions, however, did not indicate that the jury was confused about the connection between the cocaine and marijuana charges; its queries were addressed solely to the meaning of the marijuana conspiracy charge. Thus, the jury's confusion was not caused by the misjoinder. Because our review of the record has uncovered no bases for a finding of prejudice, we must hold that the misjoinder in this case was harmless error. The defendants' convictions are affirmed.[8]

---

6. MacDonald argues that this evidence would have been inadmissible had he gone to trial alone. This argument is inapposite, however, because MacDonald properly could have been joined with Sazenski for trial on the marijuana conspiracy charge.

7. In light of these findings, we find it unnecessary to address whether the evidence against MacDonald was so strong as to be "overwhelming."

8. We find Sazenski's argument that he was prejudiced by the admission into evidence of $480,-000 in cash to be without merit.